Amy K. Welch
The Law Offices of William R. Satterberg, Jr.
709 4th Avenue
Fairbanks, Alaska 99701
(907) 452-4454 (phone)
(907) 452-3988 (fax)
office@satterberg.net
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| WILLIE COOKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:21-cv-00013-TMB |
| | ) | |
| vs. | ) | |
| | ) | |
| TRANSPORTATION SECURITY | ) | **COMPLAINT** |
| ADMINISTRATION; | ) | |
| | ) | **JURY DEMANDED** |
| DAVID P. PEKOSKE, Administrator, | ) | |
| Transportation Security Administration, | ) | |
| in his official capacity; | ) | |
| | ) | |
| DRUG ENFORCEMENT | ) | |
| ADMINISTRATION; | ) | |
| | ) | |
| D. CHRISTOPHER EVANS, | ) | |
| Administrator, Drug Enforcement | ) | |
| Administration, in his official capacity; | ) | |
| | ) | |
| UNITED STATES MARSHALS SERVICE; | ) | |
| | ) | |
| UNKNOWN LAW ENFORCEMENT | ) | |
| OFFICERS OR AGENTS; | ) | |
| | ) | |
| UNITED STATES OF AMERICA; | ) | |
| | ) | |
| Defendants. | ) | |

# COMPLAINT

COMES NOW Plaintiff, WILLIE COOKS, by and through his attorney of record, the Law Offices of William R. Satterberg, Jr., and hereby complains against Defendants, TRANSPORTATION SECURITY ADMINISTRATION ("TSA"); DAVID P. PEKOSKE, in his official capacity as TSA Administrator; DRUG ENFORCEMENT ADMINISTRATION ("DEA"); D. CHRISTOPHER EVANS, in his official capacity as DEA Acting Administrator; UNITED STATES MARSHALS SERVICE ("USMS"), UNKNOWN LAW ENFORCEMENT OFFICERS OR AGENTS ("Officer(s)") and THE UNITED STATES OF AMERICA ("UNITED STATES") as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 5 U.S.C. §§ 701-706, Federal Rule of Criminal Procedure 41(g), and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

2. Venue is proper in the United States District Court for the District of Alaska at Fairbanks, Alaska pursuant to 28 U.S.C. § 1391(b)(2), 1391(e)(1)(B) because a substantial part of the events giving rise to the action occurred in or around Fairbanks, Alaska.

## PARTIES

3. Plaintiff Willie Cooks is a resident of Fairbanks, Alaska.

4. TSA is a federal agency that conducts screening and other duties to ensure the safety of transportation, including air travel.

5. Defendant Pekoske is the current administrator of the TSA and is being sued in his official capacity.

6. DEA is a federal agency that investigates and enforces laws and regulations with respect to controlled substances.

7. Defendant D. Christopher Evans is the Acting Administrator for the DEA and is being sued in his official capacity.

8. USMS is a division of the Department of Justice tasked with judicial security, fugitive apprehension, prisoner transportation, and asset forfeiture, among other duties.

9. The Unknown Officer(s), whose identities are anticipated to be discovered throughout the course of this litigation, are believed to have been residents of Fairbanks or North Pole, Alaska. The Officer(s) are being sued in their individual capacities.

10. Defendant United States of America is the national federal government established by the United States Constitution.

**FACTUAL ALLEGATIONS**

11. On or about March 23, 2020, Willie Cooks was traveling via the Fairbanks International Airport (FAI) to Las Vegas, Nevada. While passing through TSA security, Mr. Cooks was stopped for an inspection of his carry-on luggage.

12. Mr. Cooks was carrying on his person $60,000.00 USD. Without any reasonable suspicion or probable cause to believe that Mr. Cooks was engaging in criminal activity, TSA ordered Mr. Cooks to remain and took possession of his property.

13. Upon information and belief TSA reported Mr. Cooks' possession of

Page 3 of 16

Case 4:21-cv-00013-TMB    Document 1    Filed 06/22/21    Page 3 of 16

$60,000.00 USD the Airport Police Department (APD).

14. APD, or another local law enforcement agency, responded to TSA's call. APD questioned Mr. Cooks, seized his money, and held the funds until they could be turned over to the DEA. APD some time later did give the DEA Mr. Cooks' money.

15. Upon information and belief, TSA follows a practice, policy, or standard operating procedure of seizing, or causing to be seized by state or federal agencies, cash carried by travelers in an amount of $10,000.00 USD or more.

16. TSA regulations permit TSA to engage in screening or inspecting individuals "for weapons, explosives, or incendiaries." 49 C.F.R. § 1540.5; *see* 49 C.F.R. § 1540.111. Individual travelers are required to comply with TSA screening for weapons, explosives, incendiaries, or any other "destructive substance". 49 U.S.C. § 44902(a)(1)-(2); 49 C.F.R. § 1540.107(a). TSA does not have authority to seize property not specifically conferred upon it by Statue or Regulation.

17. TSA engages in administrative searches for the limited purpose of ensuring transportation safety. TSA does not have the authority to engage in general law enforcement.

18. Despite TSA's lack of authority to engage in general law enforcement duties, TSA engages in a wide-spread practice of seizing passengers' "large" amounts of cash, generally exceeding $10,000.00 USD, without reasonable suspicion or probable cause to believe that the property poses a threat to the safety and security of air travel.

19. In this case, TSA conducted a seizure of Mr. Cooks and his property when it

ordered Mr. Cooks to remain at screening after it concluded its inspection of Mr. Cooks' carry-on items and found no items qualifying as weapons, explosives, incendiaries, or other destructive substances.

20. TSA then engaged in a *de facto* seizure of property and engaged in law-enforcement activities when, pursuant to its policy, it contacted local law enforcement to come to FAI for the purposes of seizing Mr. Cooks' cash property.

21. The APD acted on behalf of TSA and/or the DEA when it arrived at FAI for the purpose of questioning Mr. Cooks and seizing his $60,000.00 USD so that it could be transferred to the DEA. APD did not provide Mr. Cooks with any warrant or inventory when seizing the money.

22. Upon information and belief, the DEA follows a practice, policy, or standard operating procedure of seizing, or causing to be seized by state or federal agencies, cash carried by travelers in an amount of $5,000.00 USD or more without reasonable suspicion or probable cause to believe that any crime has been committed.

23. In this case, the DEA unlawfully seized and continues to unlawfully withhold Mr. Cooks' property despite authority from the Department of Justice (DOJ) to return the funds.

24. After the DEA seizure, individuals who have had their property seized must file a Petition or Claim with the DEA to have their money returned. 28 C.F.R. § 9.3; 18 U.S.C. § 983. Failure to affirmatively challenge the seizure, even if it was unlawful, may result in permanent forfeiture of the money to the United States.

Page 5 of 16

Case 4:21-cv-00013-TMB   Document 1   Filed 06/22/21   Page 5 of 16

25. On March 24, 2020, Mr. Cooks, through counsel, wrote to the Fairbanks DEA office demanding return of his seized funds. No response was received.

26. On May 11, 2020, the DEA issued a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings for $60,000.00 U.S. Currency, asset ID number 20-DEA-662077.

27. On or about May 26, 2020, Mr. Cooks submitted a claim form to the DEA.

28. On June 11, 2020, the DEA sent notice to Mr. Cooks that it received the claim, accepted the claim, and that the "matter has been referred to the judicial district noted above."

29. Mr. Cooks, through counsel, made numerous attempts to determine which individual or agency should be contacted in the "judicial district" with respect to Mr. Cooks' claim. Attempts were made to contact the local DEA office and DEA Forfeiture Counsel. Mr. Cooks also attempted to ascertain the status of the claim through the local United States Attorney's office.

30. It was not until January 28, 2021, that the United States Attorney for the District of Alaska, Bryan Schroder, advised that there was no pending civil or criminal forfeiture case relating to Mr. Cooks' property. Mr. Cooks was encouraged to contact Byron Johnson of the DEA Task Force in Fairbanks.

31. After attempting to contact the local DEA office by telephone, it became clear that the number to the Fairbanks DEA Office was no longer in service.

32. Mr. Cooks eventually located a working telephone number for SA Johnson.

SA Johnson claimed that he had no control over the release of the funds, and that the USAO was responsible for authorizing release.

33. On March 10, 2021, Mr. Cooks again contacted the DEA Asset Forfeiture Section by letter in an attempt to ascertain the status of his seized money. No response was received.

34. According to March 10, 2021, e-mail correspondence between AUSA Ryan Tansey and AUSA Kelly Cavanaugh, the US Attorney's Office advised the DEA "to give the money back." The e-mail correspondence revealed that the DEA claimed it no longer had control of the money and that the United States Marshals needed to be authorized to release the funds.

35. On March 11, 2021, AUSA Tansey advised the United States Marshals Service (USMS) that the USAO declined forfeiture and to "please return the funds."

36. Mr. Cooks was then provided with a United Financial Management System (UFMS) Vendor Request Form to complete and return. That form was submitted on March 11, 2021.

37. On March 15, 2021, the USMS requested the Asset ID/CATS ID information. The DEA Case Number and Asset ID Number were provided via e-mail that same day.

38. On April 1, 2021, the USMS e-mailed AUSA Tansey stating, "Have you had any success in acquiring the letter Amy Welch mentioned that she received from DEA indicating funds would be returned to Mr. Cooks? I have an ACH form from him, but with

Page 7 of 16

Case 4:21-cv-00013-TMB   Document 1   Filed 06/22/21   Page 7 of 16

no instruction in CATS to return these funds and DEA having no knowledge of the letter I cannot proceed so we were hoping she'd have a copy to provide."

39. On April 12, 2021, Mr. Cooks responded to the USMS's e-mail, attaching the prior communications from AUSA Tansey to the USMS to "please return the funds" and AUSA Cavanaugh's e-mail to the USMS "We need to return it to the claimant. We did not pursue forfeiture."

40. Having received no further communication, Mr. Cooks e-mailed the USMS and AUSA Tansey on April 28, 2021, requesting an update on the status of the claim.

41. On May 5, 2021, the USMS indicated "We are working to get these funds returned to you as soon as possible, but at this time we do not have the required documentation from the DEA yet."

42. That same day, Mr. Cooks contacted the USAO to advise that litigation will be filed due to the continued refusal to return Mr. Cooks' property.

43. On May 25, 2021, the USMS requested that Mr. Cooks complete a new UFMS Vendor Request Form. Mr. Cooks completed and returned the form that same day. The USMS requested clarification on whether Mr. Cooks wanted his money back via check; Mr. Cooks responded affirmatively.

44. Again, having received no further information regarding the return of his property since May 25, 2021, Mr. Cooks sent an e-mail to the USMS on June 21, 2021, requesting a status update.

45. On June 22, 2021, the USMS responded "I have yet to receive official

instruction from DEA instructing this return. I am still working with them to try and obtain this as there were a few hold ups on their end that have to be solved first."

46. AUSA Tansey responded to that e-mail correspondence stating that "To be more specific, we just need someone on our end to change the designation of the funds in CATS for DEA to be able to release the funds. We're actively working on that."

47. AUSA Cavanaugh replied "We don't have anyone with CATS access yet."

48. Mr. Cooks has been deprived of his property by the United States for over a year despite the fact that the Government has affirmatively stated it is not pursuing forfeiture of the funds. Mr. Cooks has continuously attempted to resolve this dispute in good faith without the need for litigation. Nevertheless, the Government agencies continue to point the finger at each other regarding authorization to release Mr. Cooks' money. While the Government bickers as to who has authority to return the money, Mr. Cooks has been deprived, and continues to be deprived, of $60,000.00 USD.

## COUNT I: *ULTRA VIRES* AGENCY ACTION
## (5 U.S.C. §§ 701-706)
## TSA, TSA Administrator Pekoske, and the United States

49. Plaintiff hereby incorporates Paragraphs 1-48 and further alleges as follows:

50. Plaintiff brings this claim for injunctive and declaratory relief against the TSA, TSA Administrator Pekoske (in his official capacity) and the United States.

51. TSA's statutory and regulatory authority to conduct screenings and seizures is limited to ensuring transportation security. TSA is not authorized to engage in general law-enforcement activities or to seize property outside the scope of its regulatory duties to

protect transportation safety and security.

52. At the time of the seizure of Mr. Cooks' money, TSA engaged in a policy or practice of seizing, or causing to be seized, personal property not falling within the scope of TSA's authority.

53. TSA engages in *de facto* unlawful seizures by holding individuals and their property, contacting local law enforcement or other federal agencies to seize personal property, and subjecting individuals to local or federal law enforcement searches.

54. TSA is utilizing its narrow administrative screening authority to call upon other law enforcement agencies to conduct warrantless searches of persons and property without reasonable suspicion or probable cause to believe that the individual has committed a crime.

55. Mr. Cooks has suffered a direct injury arising from this *ultra vires* policy and facilitation of unlawful searches.

56. Declaratory and injunctive relief is necessary to end TSA's unlawful practices and policies.

**COUNT II: VIOLATION OF THE FOURTH AMENDMENT**
**(5 U.S.C. §§ 701-706; U.S. CONST., AMEND. IV)**
**TSA, TSA Administrator Pekoske (in his official capacity), and the United States**

57. Plaintiff hereby incorporates Paragraphs 1-56 and further alleges as follows:

58. TSA is authorized to engage in administrative searches for the limited purpose of ensuring travel safety by searching individuals, luggage, and cargo for weapons, incendiaries, and destructive substances.

59. There is no statutory or regulatory restriction upon the amount of cash with which an individual can travel within the United States.

60. Traveling with cash in any amount is not a criminal offense when traveling within the United States.

61. Searches, seizures, and stops, even when lawful, may not be extended in order to conduct further investigation without reasonable suspicion or probable cause.

62. TSA's practice of stopping travelers, withholding their property after determining no prohibited items are present, conducting further searches or calling upon law enforcement agencies to conduct searches and questioning, and facilitating the seizure of non-prohibited items amounts to an unlawful extension of the administrative search that the TSA is authorized to conduct.

63. TSA's practice, policy, or standard operating procedure of engaging in, or facilitating, the search and seizure of Mr. Cooks and his property violated Mr. Cooks' Fourth Amendment rights and he has incurred damages thereby.

**COUNT III: VIOLATION OF THE FOURTH AMENDMENT**
**(5 U.S.C. §§ 701-706; U.S. CONST., AMEND. IV)**
**DEA, DEA Acting Administrator Evans (in his official capacity), USMS,**
**and the United States**

64. Plaintiff hereby incorporates Paragraphs 1-63 and further alleges as follows:

65. At the time of the events giving rise to this claim, the DEA had a practice, policy, or standard operating procedure of seizing "large" amounts of cash from travelers without reasonable suspicion or probable cause to believe that a crime had been committed.

66. There is no statutory or regulatory restriction upon the amount of cash with which an individual can travel within the United States.

67. Traveling with cash in any amount is not a criminal offense when traveling within the United States.

68. Defendants work in concert with TSA, who does not have law-enforcement authority, to extend administrative searches and seizures for the purpose of seizing cash without probable cause or reasonable suspicion.

69. After unlawfully seizing property from travelers, the DEA then places the onus on travelers to file a petition or claim for the return of the unlawfully seized property.

70. DEA's practice, policy, or standard operating procedure of engaging in, or facilitating, the search and seizure of Mr. Cooks and his property violated Mr. Cooks' Fourth Amendment rights and he has incurred damages thereby.

71. DEA then transferred Mr. Cooks' property to the possession of the USMS.

72. The USMS has been specifically instructed to return Mr. Cooks' money to him.

73. Despite specific instruction from the USAO, the USMS refuses to return Mr. Cooks' money due to the fact that said permission has not been updated in the "CATS" database.

74. The USMS has no authority to continue withholding Mr. Cooks' unlawfully seized money, nor does it have authority to withhold property once explicit instruction to return it has been given.

75. For at least three months, the USMS has refused to return the money once instructed to do so. Requiring a notation or checked box in a database does not outweigh Mr. Cooks' constitutional right to the return of his property which, thus far, has been withheld without any due process, warrant, or other lawful authority.

76. The USMS' continued refusal to return Mr. Cooks' money is a continuing violation of his Fourth Amendment rights.

**COUNT IV: RETURN OF SEIZED PROPERTY**
**(Fed. R. Crim. P. 41; 28 U.S.C. § 1331)**
**DEA, DEA Acting Administrator Evans, USMS, United States**

77. Plaintiff hereby incorporates Paragraphs 1-76 and further alleges as follows:

78. Willie Cooks was subjected to an unlawful seizure of his property.

79. Since the commencement of the forfeiture action, the USAO has stated that it is not pursuing any civil or criminal forfeiture action with respect to Mr. Cooks' property.

80. The USAO has specifically instructed the DEA and USMS to return Mr. Cooks' property.

81. Despite declining to pursue a forfeiture action and instructing return of the funds, the DEA and USMS continue to wrongfully withhold Mr. Cooks' property from him.

82. The DEA and USMS' continued seizure of these funds violates Mr. Cooks' Fourth Amendment rights because the underlying seizure was unlawful.

83. Mr. Cooks is entitled to the immediate return of his property in the amount of $60,000.00 USD, or the equivalent thereof, plus interest.

# COUNT V: COMPENSATORY DAMAGES
(*Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971))
**Unknown Law Enforcement Officers or Agents**

84. Plaintiff hereby incorporates Paragraphs 1-83 and further alleges as follows:

85. Upon information and belief, TSA reported Mr. Cooks' $60,000.00 to the FAI Airport Police Department. Local law enforcement officers responded to FAI, questioned Mr. Cooks about his money, and seized his cash.

86. The names of the Officer(s) who responded to FAI are currently unknown, but it is expected that their identities and the law enforcement agency with which they were employed will become known during the course of this litigation.

87. The Officer(s) lacked reasonable suspicion or probable cause to believe that Mr. Cooks committed a crime by carrying $60,000.00 USD in his carry-on luggage.

88. The Officer(s) did not have Mr. Cooks' consent to seize the money, nor did they have a warrant to do so.

89. The Officer(s) never provided an inventory or accounting of the items seized to Mr. Cooks.

90. Because of the Officer(s) unlawful seizure, Mr. Cooks has been deprived of $60,000.00 USD for over a year.

91. An award of compensatory damages, in an amount to be determined through the course of this litigation, is necessary to remedy the damages caused by the Officer(s) violation of Mr. Cooks' Fourth Amendment rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby prays for relief as follows:

1. Declaratory relief against the TSA, TSA Administrator Pekoske in his official capacity, and the United States declaring *ultra vires* and unlawful the practice, policy, or standard procedure of seizing, or causing to be seized, travelers, their luggage, property, and cash based solely upon the presence of cash in any amount once the administrative screening for prohibited items has been completed;

2. Injunctive relief against the TSA, TSA Administrator Pekoske in his official capacity, and the United States prohibiting the unlawful practice, policy, or standard procedure of seizing, or causing to be seized, travelers, their luggage, property, and cash based solely upon the presence of cash in any amount once the administrative screening for prohibited items has been completed;

3. Declaratory relief against the DEA, DEA Acting Administrator Evans in his official capacity, USMS, and United States, declaring unlawful the practice of seizing travelers, their luggage, property, and cash based solely upon the presence of cash in any amount;

4. Injunctive relief against the DEA, DEA Acting Administrator Evans in his official capacity, USMS, and United States, prohibiting the practice of seizing travelers, their luggage, property, and cash based solely upon the presence of cash in any amount;

5. Order defendants DEA, DEA Acting Administrator Evans in his official capacity, USMS, and United States to immediately return Mr. Cooks' $60,000.00 USD, or

the equivalent thereof, plus interest;

6. Award Mr. Cooks compensatory damages and interest, in an amount to be more specifically proven at trial, against the currently unknown Officer(s) for violating Mr. Cooks' Fourth Amendment rights;

7. An award of attorney's fees, costs, interest, and any other such relief as may be allowable by law; and

8. Any other relief as deemed just and equitable in the premises.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a jury trial for each and every issue permitted to be tried by a jury.

Dated this 22nd day of June, 2021.

>Amy K. Welch
>The Law Offices of William R. Satterberg, Jr.
>Attorney for Plaintiff
>By: /s/ Amy K. Welch
>Amy K. Welch, Alaska Bar No. 1409064